Briar Horn (SBN 330215)
BrightWork Law
447 Sutter Street, Suite 506
San Francisco, California 94108
Telephone: (415) 827-1960
Facsimile: (833) 924-0369
Email: briar@brightworklaw.com
Attorney for Plaintiff TRIUMPH LABS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TRIUMPH LABS, INC., a Delaware corporation,

Plaintiff,

v.

KIMI CRUSH LIMITED, a California corporation, AND DOE DEFENDANTS 1 THROUGH 50,

Defendant.

Case No.: 26-1891

**COMPLAINT FOR:**
**1. FEDERAL COPYRIGHT INFRINGEMENT;**
**2. FEDERAL TRADEMARK INFRINGEMENT;**
**3. FEDERAL UNFAIR COMPETITION - FALSE DESIGNATION OF ORIGIN;**
**4. FEDERAL UNFAIR COMPETITION - FALSE ENDORSEMENT;**
**5. FEDERAL UNFAIR COMPETITION - FALSE ADVERTISEMENT;**
**6. STATUTORY MISAPPROPRIATION OF LIKENESS (CAL. CIVIL CODE § 3344);**
**7. CALIFORNIA COMMON LAW RIGHT TO PUBLICITY;**
**8. CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT.**

**<u>DEMAND FOR JURY TRIAL</u>**

//

//

//

Plaintiff TRIUMPH LABS, INC., by and through undersigned counsel, brings this Complaint against Defendant's KIMI CRUSH LIMITED, a California Corporation, and DOES 1-50, inclusive, and alleges as follows:

**INTRODUCTION**

1. Plaintiff, TRIUMPH LABS, INC. is a Delaware corporation founded in 2020, registered in California, and headquartered in San Francisco, California. Plaintiff provides skill-based real-money tournament style mobile and online video gaming services to consumers. Plaintiff offers its games through its app, made available on Plaintiff's website (https://triumpharcade.com/) and the app store.
2. Plaintiff has garnered over 700,000 reviews (averaging 4.7 stars out of 5 stars)—demonstrating that Plaintiff's is indisputably well known and has developed a stellar reputation.
3. Plaintiff utilizes a federally registered service mark in connection the marketing and sale of its services.
4. Plaintiff has also developed its own unique copyright protected advertising materials. Generally, Plaintiff records livestreams in which celebrities and others utilize, discuss, and endorse Plaintiff's services. Plaintiff then uses snippets of these full-length livestreams to create shorter video advertisements that it disseminates to the public as paid promotions on social media sites, including Meta social media platforms. Plaintiff's advertisements include one or more links that, if clicked, direct consumers to Plaintiff's services. Plaintiff's advertisements drive much of Plaintiff's revenue.

//

//

5. Defendant provides online gaming services and is Plaintiff's direct competitor. On or about January 2026, Defendant, without authorization, willfully copied, deceptively altered, and then disseminated Plaintiff's advertisements as their own paid promotions.
6. In some instances, Defendant's offending advertisements displayed Plaintiff's registered service mark.
7. Defendants ran the offending advertisements on Meta social media platforms (on which Plaintiff ran its original advertisements) as well as on TikTok.
8. Defendants deceptively altered the advertisements, such that they included one or more links, that, if clicked by a would-be consumer that was seeking to be directed to Plaintiff's services, that consumer would instead be misdirected to Defendants' competing services.
9. To be clear, Defendants' offending advertisements are not like Plaintiff's advertisements, they are Plaintiff's advertisements copied whole cloth and altered to misdirect the public to Defendant's competing services.

## JURISDICTION AND VENUE

10. This is an action for infringement of a federally-registered trademark in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), infringement of federally-registered copyrighted material in violation of the Copyright Act, 17 U.S.C. § 501, and unfair competition, including false advertising, false endorsement, and false designation of origin, all in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). This action also includes claims under California law for statutory misappropriation of

likeness in violation of Cal. Civil Code § 3344, California common law misappropriation of likeness, and California common law trademark infringement.

11. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves substantial claims arising under: (i) the federal Lanham Act, specifically Section 32(1) for federal trademark infringement of a registered trademark (see 15 U.S.C. § 1114(1)); and (ii) the federal Copyright Act, as amended, 17 U.S.C. § 101 et seq.

12. Federal district courts have subject matter jurisdiction over claims based on the Lanham Act and Copyright Act because such claims raise a federal question.

13. The Lanham Act provides: "The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 15 U.S.C. § 1121(a).

14. In addition, 28 U.S.C. § 1331 provides more generally: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

15. Finally, 28 U.S.C. § 1338(a) states that district courts "shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."

16. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, which provides in part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

form part of the same case or controversy under Article III of the United States Constitution."

17. This Court has personal jurisdiction over Defendant. Defendant is incorporated in California and Defendant is headquartered in San Francisco, California. Defendant's acts of infringing Plaintiff's federally registered copyrighted advertising materials and Plaintiff's federally-registered service mark were committed in San Francisco, California located in the Northern District of California, San Francisco Division, and therefore within the jurisdiction of this Court. Defendant ran advertising in this state and has transacted business by selling its services consumers within this state. Defendant has engaged in substantial activity within California and this judicial district and has had substantial contacts there, having purposefully incorporated therein, having based its operations therein, and having availed itself of the privilege of conducting business activities in the forum. Defendant has caused injury to Plaintiff within California and within this judicial district and division.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because: (i) Defendant is a company subject to personal jurisdiction in this district; (ii) Defendant is a residents of the State in which the district is located; (iii) a substantial part of the events or omissions giving rise to the claim occurred in this judicial district; (iv) Defendant is headquartered, may be found, and transacts business in this district; (v) a substantial part of the events giving rise to Plaintiff's claims occurred and are continuing to occur in this district; and (vi) Defendant is deemed to reside in this district as its contacts with this district would be sufficient to subject it to personal jurisdiction therein if this district were a separate State.

## DIVISIONAL ASSIGNMENT

19. This case should be assigned to the San Francisco Division. Pursuant to the General Order No. 44 “Assignment Plan,” Section D: “Unless otherwise required by the Executive Committee, cases shall be assigned by the Clerk to the judges holding chambers in the courthouse or courthouses serving the county in which the action arises.” This action arises in San Francisco California as that is where a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

20. Plaintiff, TRIUMPH LABS, INC., is a Delaware corporation registered to conduct business in California with an office and place of business located at 90 Sheridan Street, San Francisco CA 94103.
21. Defendant, KIMI CRUSH LIMITED, is a California corporation organized and existing under the laws of the State of California, having an office and place of business at 3739 Balboa St. #1163, San Francisco, CA 94121.
22. The above-named Defendant, and its subsidiaries and agents, are collectively referred to as “Defendant.” The true names and capacities of the defendants sued herein as DOE DEFENDANTS 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues such defendants by fictitious names. Each of the defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE DEFENDANTS when such identities become known.

23. Plaintiff is informed and believes that at all relevant times, each and every defendant was acting as an agent and/or employee of each of the other defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, Defendant and each of the other defendants.

## ALLEGATIONS COMMON TO ALL COUNTS

24. Defendant is a California corporation that was incorporated shortly over one year ago. Defendant offers online gaming services and is Plaintiff's direct competitor.

25. Defendant has, without authorization, knowingly, willfully, intentionally, and in bad faith engaged in the copying, display, and dissemination in interstate commerce of Plaintiff's copyright protected advertising materials and displayed Plaintiff's federally registered service mark in advertisements that Defendant ran on social media platforms.

26. Defendant engaged in this conduct as part of a campaign to deceive the public and to improperly steer Plaintiff's would-be consumers to Defendant's services.

27. On or about, January 2026, Plaintiff became aware that Defendant was running paid promotions, including on TikTok and Meta social media platforms, that violated Plaintiff's copyrights and improperly displayed Plaintiff's federally registered service mark ("Offending Advertisements").

28. Upon being alerted to the issue, Plaintiff utilized Sensor Tower to download copies of Defendant's Offending Advertisement and discovered the scope of Defendant's improper conduct.

29. Beginning on or about January 2026, Defendant, without authorization and in violation of law, willfully copied, deceptively altered, and then disseminated in interstate commerce at least 23 of Plaintiff's advertisements as Defendant's own paid promotions (the "Offending Advertisements").

30. Defendant displayed Plaintiff's federally registered copyright protected advertising materials in 6 of the 23 Offending Advertisements.

31. Defendant prominently displayed Plaintiff's registered service mark in 19 of the 23 Offending Advertisements.

32. Defendant ran the Offending Advertisements on Meta social media platforms –where Plaintiff had run its original advertisements as paid promotions. Defendant also ran the Offending Advertisements on TikTok as paid promotions.

33. Defendant deceptively altered Plaintiff's original advertisements to include one or more link(s) that, when clicked by a consumer seeking to be directed to Plaintiff's services, misdirected those consumers to Defendant's competing services.

34. To be clear, Defendant's Offending Advertisements are not like Plaintiff's advertisements, they are Plaintiff's advertisements copied whole cloth and altered to confuse and misdirect the public.

## <u>COUNT 1</u>

## TRADEMARK INFRINGEMENT

## (15 U.S.C. § 1114)

35. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1–34 and 59-167 inclusive, as though fully set forth.

36. As its first ground for relief, Plaintiff alleges federal trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

37. Plaintiff's registered service mark ("Service Mark") and logo is depicted below (see **Exhibit A** for a true copy of the registration):

38. Plaintiff's first use of the Service Mark was March 22, 2021. Plaintiff's first use of the Service Mark in commerce occurred June 10, 2022. Plaintiff has marketed and sold its services in United States commerce under the Service Mark since June 10, 2022. Plaintiff has used the Service Mark continuously in United States commerce since that time.

39. Plaintiff is the owner of a federal trademark registration, Reg. No. 7,299,038, which has a registration date of February 6, 2024 on the principal register of the United States Patent and Trademark Office. This registration for the Service Mark covers "CLASS 9: Downloadable game software for use on mobile and cellular phones, handheld digital devices, and computers; Downloadable computer software, namely, software development tools for the creation of mobile internet applications and client interfaces; Downloadable game software" and "CLASS 42: Design, development, and implementation of software for mobile game applications." A true and correct copy of this registration is attached to this Complaint as Plaintiff's **Exhibit A** and incorporated as if set forth fully herein.**.** Plaintiff's right to use this Service Mark has become incontestable under the provisions of 15 U.S.C. § 1065. The registration is valid and subsisting and has never been cancelled.

40. Plaintiff's services are marketed and sold under its Service Mark throughout the United States. Plaintiff has advertised its commercial offerings online, including through advertisements on social media platforms.

41. Plaintiff has garnered over 700,000 reviews (averaging 4.7 stars out of 5 stars), demonstrating that Plaintiff's is indisputably well known to consumers and has developed a stellar reputation.

42. Plaintiff has invested substantial time, effort, and financial resources promoting its Service Mark in connection with the marketing and sale of its services in interstate commerce.

43. The Service Mark has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, its quality services, and its goodwill. The public recognizes the Service Mark and associates it with Plaintiff.

44. Plaintiff's Service Mark is inherently distinctive as applied to Plaintiff's services and/or has acquired distinctiveness and a secondary meaning as applied to Plaintiff's services.

45. Defendant has, without the consent of Plaintiff, the registrant, knowingly and willfully used in commerce a reproduction, counterfeit, copy, or colorable imitation of a Plaintiff's Service Mark in connection with the sale, offering for sale, distribution, or advertising of its services in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, in violation of 15 U.S. Code § 1114(1)(a).

46. Defendant's acts were committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

47. Defendant use in commerce Plaintiff's Service Mark and/or a spurious designation that is identical with, or substantially indistinguishable from Plaintiff's Service Mark in

connection with the sale, offering for sale, distribution, or advertising of Defendant's services, constitutes use of a counterfeit mark.

48. Defendant has and continues to intentionally use the Service Mark, knowing the mark or designation is counterfeit, in connection with the sale, offering for sale, or distribution of its services. Plaintiff is therefore entitled to recover reasonable attorney fees and treble damages pursuant to 15 U.S. Code § 1117(b).

49. Defendant's acts were committed with knowledge and the willful intention that the counterfeit use of the Service Mark would cause confusion, mistake, or to deceive.

50. Pursuant to 15 U.S. Code § 1117(c), due to Defendant's use of a counterfeit mark in connection with the sale, offering for sale, or distribution of its services, Plaintiff may elect, at any time before final judgment is rendered an award of statutory damages for any such use in the amount of: (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of service sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

51. On information and belief, notwithstanding Plaintiff's established rights in the Service Mark, Defendant has without authorization copied and disseminated the Service Mark in interstate commerce in connection with the sale and offering for sale of its competing services from approximately January 1, 2026 through the date of the filing of this Complaint.

52. Defendant has without authorization, run paid promotions, the Offending Advertisements, for its services on social media platforms, including TikTok and Meta

social media platforms. 19 of the 23 Offending Advertisements that were run by Defendant on social media prominently displayed Plaintiff's federally registered Service Mark.

53. A true and correct copy of various screenshots taken from the 19 Offending Advertisements, demonstrating that Defendant displayed Plaintiff's federally registered Service Mark, are attached to this Complaint as **Exhibit B** and incorporated as if set forth fully herein.

54. Defendant has engaged in its infringing activity despite having constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072 and despite having actual knowledge of Plaintiff's use of the Service Mark.

55. Defendant's actions are likely to mislead the public into concluding that its services originate with or are authorized by Plaintiff, which will damage both Plaintiff and the public. Plaintiff has no control over the quality of services provided by Defendant and because of the source-confusion caused by Defendant, Plaintiff has lost control over its valuable goodwill.

56. Defendant has advertised and offered its services using Plaintiff's Service Mark with the intention of misleading, deceiving, or confusing consumers as to the origin of its services and of trading on Plaintiff's reputation and goodwill. Defendant's use of the Service Mark constitutes willful, deliberate, and intentional trademark infringement in violation of 15 U.S.C. § 1114(1) and has caused and is likely to continue to cause consumer confusion, mistake, or deception.

57. As a direct and proximate result of Defendant's trademark infringement, Plaintiff has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and

Defendant has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

58. Defendant's acts of infringement will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

**COUNT 2**

**COPYRIGHT INFRINGEMENT**

**(17 U.S.C. § 101 ET SEQ.)**

59. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1–58, and 80-167 inclusive, as though fully set forth.

60. As its second ground for relief, Plaintiff alleges federal copyright infringement under Copyright Act of 1976, 17 U.S.C. § 106 and 17 U.S.C. § 501.

61. Plaintiff has developed unique copyright protected advertising materials that include videorecorded livestreams of celebrities, Plaintiff's employees, and others, using, discussing, and endorsing Plaintiff's services.

62. Plaintiff uses clips taken from its own copyright protected full-length livestream videos to create shorter advertisements that it disseminates to the public through paid promotions on social media sites, including Meta social media platforms.

63. Plaintiff's original advertisements each included one or more link(s) that, if clicked, direct consumers to Plaintiff's services.

64. Plaintiff's advertisements drive much of Plaintiff's revenue.

65. Plaintiff is currently and at all relevant times has been the sole proprietor of all rights, title and interest in and to the copyright for each of the following four separate and

distinct livestream recordings at issue in this action, titled: (i) "Soulja Boy Triumph Stream 5/29/25," (ii) "Yungeen Ace Triumph Stream 4/20/25," (iii) "OhGeesy Triumph Stream 5/30/25," and (iv) "Nick Cannon Triumph Stream 7/1/15" (mistitled, as this stream occurred on 7/1/25), (together, the "Works"). The four full-length livestream video recordings, that together constitute the Works, can be found at the following link: https://drive.google.com/drive/folders/1ZPCgdGh1EcrAeC3glPLINZIQQTNjk5bS?usp=sharing

66. Plaintiff registered each of the videos with the Register of Copyrights pursuant to 17 US.C. § 411(a). The video advertisement titled "Soulja Boy Triumph Stream 5/29/25" has an effective registration date of February 3, 2026, Registration No. PA 2-565-017. The video advertisement titled "Yungeen Ace Triumph Stream 4/20/25" has an effective registration date of February 3, 2026, Registration No. PA 2-565-294. The video advertisement titled "OhGeesy Triumph Stream 5/30/25" has an effective registration date of February 3, 2026, Registration No. PA 2-565-316. The video advertisement titled "Nick Cannon Triumph Stream 7/1/15" (mistitled as this stream occurred on 7/1/25) has an effective registration date of February 3, 2026, Registration No. PA 2-565-318. A true and correct copy of the Certificates of Registration from the U.S. Copyright Office for each of the individual advertisements that constitute the Works are attached to this Complaint as **Exhibit C** and incorporated as if set forth fulling herein.

67. Each of the individually federally registered copyrighted work that together comprise the Works contain wholly original work that is copyrightable subject matter under the laws of the United States.

68. At no time has Plaintiff authorized Defendant to reproduce, distribute, prepare derivative works, or publicly display any of the separately copyrighted works that comprise the Works, or any portion thereof.

69. At least 5 of Defendant's 23 Offending Advertisements included portions of Plaintiff's federally registered copyrighted Works.

70. Defendant is willfully infringing Plaintiff's copyright in each of the livestream recordings that constitute the Works by reproducing, displaying, distributing, and creating derivative works of each of them without permission and in violation of the Copyright Act, 17 U.S.C. § 106.

71. A true and correct copy of screenshots of the Works are attached to this Complaint as **Exhibit D** and incorporated as if set forth fully herein.

72. A true and correct copy of screenshots of Plaintiff's original advertisements (that incorporated portions of the Works) are attached to this Complaint as **Exhibit E**.

73. A true and correct copy of screenshots of Defendant's Offending Advertisements are attached to this Complaint as **Exhibit F**.

74. Each of the Offending Advertisements, that incorporate portions of Plaintiff's federally registered copyright protected livestream video recordings (Works), constitute a separate and distinct actionable instance of copyright infringement.

75. Defendant's infringement as alleged herein was willful, executed with full knowledge of Plaintiff's copyrights, and in conscious disregard of Plaintiff's exclusive rights in each of the video recordings that together constitute the Works.

76. By reason of Defendant's infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage to its ownership rights in the various copyrighted Works.

77. Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining Defendant, its officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Defendant from engaging in further acts of copyright infringement.

78. Plaintiff is further entitled to recover from Defendant the gains, profits, and advantages Defendant has obtained from its copyright infringement.

79. Defendant's acts of infringement will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

## COUNT 3
## UNFAIR COMPETITION - FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

80. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1–79, and 92-167 inclusive, as though fully set forth.

81. As its third ground for relief, Plaintiff alleges unfair competition by false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82. Defendant ran commercial advertisements marketing its services in interstate commerce, the Offending Advertisements, that improperly and without authorization incorporated portions of Plaintiff's copyright protected livestream videos (the Works), and/or prominently displayed Plaintiff's federally registered Service Mark, and/or incorporated

words, terms, names, symbols, and devices that associated those advertisements with Plaintiff.

83. Defendant Offending Advertisements included one or more deceptive link(s) that, when clicked, misdirected Plaintiff's would-be-consumers to Defendant's services.

84. A reasonable consumer who clicked the link(s) in Defendant's Offending Advertisement(s) and was directed to Defendant's services would reasonably and yet incorrectly surmise that Defendant's services were being offered by Plaintiff and that Plaintiff was the origin of those services.

85. Defendant's actions were likely to cause confusion, mistake, and deceive as to whether Plaintiff was the origin of Defendant's services.

86. Defendant's expressly intended to and did cause confusion, mistake, and deception as to whether Plaintiff was the origin of Defendant's services.

87. The actions of Defendant as alleged herein constitute intentional, willful, knowing, and deliberate unfair competition in violation of 15 U.S.C. § 1125(a).

88. As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendant has and will continue to unfairly acquire income, profits, and goodwill.

89. Plaintiff is entitled to recover from Defendant: (1) Defendant's profits, (2) any damages sustained by Plaintiff, and (3) the costs of the action.

90. The scope and degree of Defendant's intentionally deceptive unfair business practices and Defendant's other wrongful conduct, including Defendant's intentional copyright and trademark infringement, render this an exceptional case authorizing the award of reasonable attorney fees to Plaintiff.

91. Defendant's acts of unfair competition will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

**COUNT 4**

**UNFAIR COMPETITION - FALSE ENDORSEMENT**

**(15 U.S.C. § 1125(a))**

92. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1–91, and 107-167 inclusive, as though fully set forth.

93. As its fourth ground for relief, Plaintiff alleges unfair competition by false endorsement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

94. Defendant ran commercial advertisements marketing its services in interstate commerce, the Offending Advertisements, that improperly and without authorization incorporated portions of Plaintiff's copyright protected livestream videos (the Works), and/or prominently displayed Plaintiff’s federally registered Service Mark, and/or incorporated words, terms, names, symbols, and devices that associated those advertisements with Plaintiff.

95. Plaintiff’s advertisements, that Defendant improperly copied whole cloth and ran as their own paid promotions, featured celebrities and Plaintiff’s employees using, discussing, and endorsing Plaintiff’s services.

96. Plaintiff has rights to, and financial interest in, the endorsements featured in its advertisements.

97. Defendant's Offending Advertisements incorporated those endorsements, and showed various celebrities and Plaintiff's employees using, discussing, and endorsing Plaintiff's services.

98. Defendant's Offending Advertisements also included one or more deceptive link(s) that, when clicked, misdirected consumers to Defendant's services.

99. A reasonable consumer who clicked the link(s) in Defendant's Offending Advertisements would be misdirected to Defendant's services and therefore reasonably yet incorrectly surmise that Plaintiff, the celebrities shown in Defendant's advertisements, and Plaintiff's employees shown in Defendant's advertisements, were affiliated with, connected to, associated with, sponsored, and/or approved Defendant's services or commercial activities.

100. Defendant's actions were likely to cause confusion, mistake, and deceive as to Plaintiff, the celebrities shown in Defendant's advertisements, and Plaintiff's employees' shown in Defendant's advertisements, having an affiliation with, connection to, association with, having sponsored, and/or having approved Defendant's services or commercial activities.

101. Defendant's actions were intended to and did cause confusion, mistake, and deception as to Plaintiff, the celebrities shown in Defendant's advertisements, and Plaintiff's employees shown in Defendant's advertisements, having an affiliation with, connection to, association with, having sponsored, and/or approved Defendant's services or commercial activities.

102. The actions of Defendant, as alleged herein, constitute intentional, willful, knowing, and deliberate unfair competition in violation of 15 U.S.C. § 1125(a).

103. As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendant has and will continue to unfairly acquire income, profits, and goodwill.

104. Plaintiff is entitled to recover from Defendant: (1) Defendant's profits, (2) any damages sustained by Plaintiff, and (3) the costs of the action.

105. The scope and degree of Defendant's intentionally deceptive unfair business practices and Defendant's other wrongful conduct, including Defendant's intentional copyright and trademark infringement, render this an exceptional case authorizing the award of reasonable attorney fees to Plaintiff.

106. Defendant's acts of unfair competition will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

**COUNT 5**

**UNFAIR COMPETITION - FALSE ADVERTISING**

**(15 U.S.C. § 1125(a))**

107. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1–106, and 122-167 inclusive, as though fully set forth.

108. As its fifth ground for relief, Plaintiff alleges unfair competition by false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

109. Defendant ran commercial advertisements marketing its services in interstate commerce, the Offending Advertisements, that improperly and without authorization incorporated portions of Plaintiff's copyright protected livestream videos (the Works), and/or prominently displayed Plaintiff's federally registered Service Mark, and/or

incorporated words, terms, names, symbols, and devices that associated those advertisements with Plaintiff.

110. Plaintiff's advertisements, that Defendant improperly copied whole cloth and ran as their own paid promotions, featured celebrities and Plaintiff's employees using, discussing, and endorsing Plaintiff's services.

111. Defendant's Offending Advertisements incorporated those endorsements, and showed various celebrities and Plaintiff's employees using, discussing, and endorsing Plaintiff's services.

112. Defendant's Offending Advertisements also included one or more deceptive link(s) that, when clicked, misdirected consumers to Defendant's services.

113. A reasonable consumer who clicked the link(s) in Defendant's Offending Advertisements –intending to be directed to Plaintiff's services as had been demonstrated in the advertisement— was instead misdirected to Defendant's inferior competing services.

114. Defendant's conduct constitutes false advertising in that the Offending Advertisements misrepresent the nature, characteristics, and qualities of Defendant's services and include false or misleading description of fact, and/or false or misleading representation of fact.

115. Defendant's actions were likely to cause confusion, mistake, and to deceive consumers.

116. Defendant's actions were intended to and did cause actual consumer confusion, mistake, and deception.

117. The actions of Defendant, as alleged herein, constitute intentional, willful, knowing, and deliberate unfair competition in violation of 15 U.S.C. § 1125(a).

118. As a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendant has and will continue to unfairly acquire income, profits, and goodwill.

119. Plaintiff is entitled to recover from Defendant: (1) Defendant's profits, (2) any damages sustained by Plaintiff, and (3) the costs of the action.

120. The scope and degree of Defendant's intentionally deceptive unfair business practices and Defendant's other wrongful conduct, including Defendant's intentional copyright and trademark infringement, render this an exceptional case authorizing the award of reasonable attorney fees to Plaintiff.

121. Defendant's acts of unfair competition will cause further irreparable injury to Plaintiff if Defendant is not restrained by this Court from further violation of Plaintiff's rights. Plaintiff has no adequate remedy at law.

## COUNT 6
## STATUTORY MISAPPROPRIATION OF LIKENESS
## (CAL. CIVIL CODE § 3344)

122. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1–121, and 141-167 inclusive, as though fully set forth.

123. As its sixth ground for relief, Plaintiff alleges statutory misappropriation of likeness in violation of Cal. Civil Code § 3344.

124. Plaintiff is the assignee of any and all misappropriation of likeness and right of publicity claims that Colm Hayden, Esteban Alvarado, and Sean Moehring each have or

might have against a third party, including Defendant, for any violation of California statutory misappropriation of likeness and California common law right of publicity. A true and correct copy of the contracts assigning these claims/rights to Plaintiff are attached hereto as **Exhibit G.**

125. Plaintiff's ran video advertisements that featured Colm Hayden, Esteban Alvarado, and Sean Moehring (each of whom is employed by Plaintiff), using, discussing, and endorsing Plaintiff's services.

126. Plaintiff has a financial interest in and to those endorsements which were featured in its advertisements.

127. Defendant, without authorization, copied and ran 23 of Plaintiff's advertisements as their own paid promotions (Offending Advertisement), some of which featured Colm Hayden, Esteban Alvarado, and Sean Moehring. Defendant ran these advertisements on TikTok and Meta social media platforms.

128. At least one of the Offending Advertisements Defendant ran included the voice(s) and/or photograph(s) (as defined by Cal. Civil Code § 3344(a)) of Colm Hayden.

129. At least one of the Offending Advertisements Defendant ran included the voice(s) and/or photograph(s) (as defined by Cal. Civil Code § 3344(a)) of Esteban Alvarado.

130. At least one of the Offending Advertisements Defendant ran included the voice(s) and/or photograph(s) (as defined by Cal. Civil Code § 3344(a)) of Sean Moehring.

131. Defendant knowingly used Colm Hayden, Esteban Alvarado, and Sean Moehring's voices and/or photographs (as defined by Cal. Civil Code § 3344(a)) to advertise or sell its services.

132. Defendant's use did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign.

133. Defendant did not have prior consent nor any consent to use the voices or photographs of Colm Hayden, Esteban Alvarado, and Sean Moehring to advertise or sell its services.

134. Defendant's use of Colm Hayden, Esteban Alvarado, and Sean Moehring's voices and/or photographs was directly connected to Defendant's commercial purpose.

135. As a result of Defendant using Colm Hayden, Esteban Alvarado, and Sean Moehring's voices and photographs to advertise or sell its services, both Plaintiff as well as Colm Hayden, Esteban Alvarado, and Sean Moehring were harmed.

136. Each instance of unauthorized use of either Colm Hayden, Esteban Alvarado, or Sean Moehring's picture and/or voice constitutes a separate actionable instance of misappropriation of likeness.

137. Defendant's conduct was a substantial factor in causing Plaintiff's, Colm Hayden's, Esteban Alvarado's, and Sean Moehring's harm.

138. Pursuant to Cal. Civil Code § 3344(a), Plaintiff is entitled to recover from Defendant the greater of seven hundred fifty dollars ($750) or actual damages resulting from each instance of Defendant's unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages.

139. Defendant engaged in the conduct alleged herein with malice, oppression, or fraud, allowing for the recovery of punitive damages pursuant to Cal. Civil Code § 3344, and Cal. Civil Code § 3294.

140. Plaintiff is entitled to recover attorney's fees and costs from Defendant pursuant to Cal. Civil Code § 3344.

**COUNT 7**

**CALIFORNIA COMMON LAW RIGHT OF PUBLICITY**

141. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1–140, and 154-167 inclusive, as though fully set forth.

142. As its seventh ground for relief, Plaintiff alleges California common law misappropriation of likeness.

143. Plaintiff is also the assignee of all misappropriation of likeness and right of publicity claims that Colm Hayden, Esteban Alvarado, and Sean Moehring each have or might have against any third party, including Defendant, for any violation of California statutory misappropriation of likeness and California common law right of publicity. (See, **Exhibit G**.)

144. Plaintiff's video advertisements featured Colm Hayden, Esteban Alvarado, and Sean Moehring (each of whom is employed by Plaintiff), using, discussing, and endorsing Plaintiff's services.

145. Plaintiff has a financial interest in and to those endorsements featured in its advertisements.

146. Defendant, without authorization, copied and ran, as their own paid promotions, at least fourteen of Plaintiff's advertisements, some of which featured Colm Hayden, Esteban Alvarado, and Sean Moehring. Defendant ran these advertisements on TikTok and Instagram.

147. Defendant used Colm Hayden, Esteban Alvarado, and Sean Moehring's identities in its advertisements for its services.

148. Colm Hayden, Esteban Alvarado, and Sean Moehring were each shown in one or more of Plaintiff's original advertisement. Colm Hayden, Esteban Alvarado, and Sean Moehring were each shown in one or more of Defendant's anauthorized advertisements.

149. Defendant appropriated Colm Hayden, Esteban Alvarado, and Sean Moehring's identities, names, or likenesses to Defendant's commercial advantage

150. Defendant lacked consent to use Colm Hayden, Esteban Alvarado, and Sean Moehring's identities, names, or likenesses.

151. Plaintiff, Colm Hayden, Esteban Alvarado, and Sean Moehring's were harmed by Defendant's conduct.

152. Defendant's conduct was a substantial factor in causing Plaintiff's, Colm Hayden's, Esteban Alvarado's, and Sean Moehring's harm.

153. Defendant engaged in the conduct alleged herein with malice, oppression, or fraud, allowing for the recovery allowing for the recovery of punitive damages pursuant to Cal. Civil Code § 3294.

## COUNT 8

## CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT

154. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1–153 inclusive, as though fully set forth.

155. As its eighth ground for relief, Plaintiff alleges California common law trademark infringement.

156. Plaintiff uses the Service Mark in connection with the sale of its services.

157. Plaintiff's first use of the Service Mark in California was March 22, 2021. Plaintiff's first use of the Service Mark in commerce in California occurred June 10, 2022.

158. Plaintiff has marketed and sold its services in United States commerce and in the State of California under the Service Mark since June 10, 2022. Plaintiff has used the Service Mark continuously in United States and California commerce since that time.

159. Plaintiff's full, Plaintiff's abbreviated names, including "Triumph" and/or "Triumph GG," and/or Plaintiff's Service Mark are inherently distinctive as applied to Plaintiff's services and/or has acquired distinctiveness as applied to Plaintiff's services and have acquired a secondary meaning.

160. Defendant knowingly and intentionally used a confusingly similar, and in fact identical, service mark to Plaintiff's Service Mark, and/or the "Triumph" name and/or "Triumph GG" in 19 of Defendant's 23 Offending Advertisements which were run in California and elsewhere.

161. Defendant is Plaintiff's direct competitor and Plaintiff and Defendant operate in the same geographic locations.

162. The public has come to associate appellant's name and Service Mark with the kind of business enterprise conducted by both Plaintiff and Defendant.

163. Defendant's use of Plaintiff's Service Mark has resulted in a strong likelihood of confusion in the minds of the public that Defendant's business is that of, or as one affiliated with Plaintiff.

164. Defendant's use of Plaintiff's Service Mark has resulted in actual confusion in the minds of the public that Defendant's business is that of, or as one affiliated with Plaintiff.

165. As a result of Defendant's conduct Plaintiff was harmed.

166. Defendant's conduct was a substantial factor in causing Plaintiff's harmed.

167. Plaintiff is entitled to recover from Defendant actual damages, lost profits, reputational damage, and disgorgement of Defendant's profits.

**REQUEST FOR RELIEF**

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that this Court enter an Order granting it the following relief:

A. Entering a judgment that Plaintiff's federally-registered Service Mark has been and continues to be infringed by Defendant in violation of 15 U.S.C. § 1114(1);

B. Permanently enjoining and restraining Defendant and each of its agents, representatives, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them from using Plaintiff's Service Mark, with or without its accompanying logo or any other designation, alone or in combination with other words or symbols, as a trademark or trade name component or otherwise, to market, advertise, distribute, or identify Defendant's services where that designation would create a likelihood of confusion, mistake or deception with Plaintiff's Service Mark; that Defendant conduct or pay for Plaintiff to conduct corrective advertising to stop consumer confusion; and that Defendant's assets be frozen.

C. Pursuant to 15 U.S.C. § 1116(a), directing Defendant to file with the Court and serve on Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and

under oath setting forth in detail the manner and form in which Defendant has complied with the above injunction(s);

D. Pursuant to 15 U.S.C. § 1118, requiring that Defendant and all others acting under Defendant's authority, at their cost, be required to deliver up and destroy all devices, literature, advertising, labels, and other material in their possession bearing the infringing designation;

E. Awarding Plaintiff all damages it sustained as the result of Defendant's acts of infringement of Plaintiff's Service Mark, said amount to be trebled, together with prejudgment interest, pursuant to 15 U.S.C. § 1117;

F. Awarding Plaintiff all profits received by Defendant from sales and revenues of any kind made as a result of its willful and intentional infringement of Plaintiff's Service Mark, said amount to be trebled, after an accounting, pursuant to 15 U.S.C. § 1117;

G. Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117;

H. Awarding Plaintiff, at Plaintiff's election, statutory damages of $200,000 per type of service sold, offered for sale, or distributed pursuant to 15 U.S.C. § 1117(c)(1);

I. Awarding Plaintiff, at Plaintiff's election, statutory damages of $2,000,000 per type of service sold, offered for sale, or distributed upon a finding that Defendant intentional used a mark or designation, knowing such mark or designation was a counterfeit mark (as defined in section 1116(d)), in connection with the sale, offering for sale, or distribution its services, pursuant to 15 U.S.C. § 1117(c)(2);

J. For a preliminary and permanent injunction enjoining and restraining Defendant and all persons acting in concert with Defendant from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or

performing any materials that are substantially similar to Plaintiff's copyrighted Works, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendant's possession or control;

K. For a preliminary and permanent injunction enjoining and restraining Defendant and its agents, servants, employees, attorneys, and all persons acting in concert and participation with it from infringing upon Plaintiff's copyrights;

L. For actual damages, punitive damages, and Defendant's profits, to be determined at trial, plus interest, resulting from Defendant's violations of each of Plaintiff's copyrighted advertisements that, taken together, comprise the Works;

M. Entering a judgment that Defendant engaged in unfair competition in violation of 15 U.S.C. § 1125(a);

N. Awarding Plaintiff all damages it sustained as the result of Defendant's acts of unfair competition, said amount to be trebled, together with prejudgment interest, pursuant to 15 U.S.C. § 1117;

O. Awarding Plaintiff as the result of Defendant's acts of unfair competition all profits received by Defendant from sales and revenues of any kind made as a result of its willful and intentional unfair competition, said amount to be trebled, after an accounting, pursuant to 15 U.S.C. § 1117;

P. Awarding Plaintiff, as the result of Defendant's acts of unfair competition, its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117;

Q. Awarding Plaintiff, at Plaintiff's election, statutory damages of $200,000 per type of service sold, offered for sale, or distributed as the result of Defendant's acts of unfair competition pursuant to 15 U.S.C. § 1117(c)(1);

R. Awarding Plaintiff, at Plaintiff's election, statutory damages of $2,000,000 per type of service sold, offered for sale, or distributed upon a finding that Defendant engaged in unfair competition by intentionally using a mark or designation, knowing such mark or designation was a counterfeit mark (as defined in section 1116(d)), in connection with the sale, offering for sale, or distribution its services, pursuant to 15 U.S.C. § 1117(c)(2);

S. Entering a judgment that Defendant misappropriated the likeness of Colm Hayden, Esteban Alvarado, and Sean Moehring in violation of Cal. Civil Code § 3344(a);

T. Awarding Plaintiff damages in the amount of seven hundred fifty dollars ($750) or actual damages resulting from each instance of Defendant's unauthorized use of Colm Hayden, Esteban Alvarado, and/or Sean Moehring likeness, and any profits from Defendant's unauthorized use of Colm Hayden, Esteban Alvarado, and/or Sean Moehring likeness that are attributable to the use and are not taken into account in computing the actual damages;

U. Awarding Plaintiff punitive damages pursuant to Cal. Civil Code § 3344, and Cal. Civil Code § 3294;

V. Awarding Plaintiff attorney's fees and costs pursuant to Cal. Civil Code § 3344;

W. For a preliminary and permanent injunction enjoining and restraining Defendant and all persons acting in concert with Defendant misappropriating the likeness of Colm Hayden, Esteban Alvarado, and/or Sean Moehring;

X. Entering a judgment that Defendant violated Colm Hayden, Esteban Alvarado, and Sean Moehring's common law right to publicity;

Y. Awarding Plaintiff nominal and actual damages caused by Defendant's violation of violated Colm Hayden, Esteban Alvarado, and Sean Moehring's common law right to publicity;

Z. Awarding Plaintiff punitive damages, pursuant to Cal. Civil Code § 3294, for Defendant's violation of Colm Hayden, Esteban Alvarado, and Sean Moehring's common law right to publicity;

AA. For a preliminary and permanent injunction enjoining and restraining Defendant and all persons acting in concert with Defendant from violating Colm Hayden, Esteban Alvarado, and/or Sean Moehring's right to privacy and right to publicity;

BB. Entering a judgment that Defendant's action constitutes California common law trademark infringement and awarding Plaintiff its actual damages, lost profits, reputational damage, and disgorgement of Defendant's profits.

CC. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands trial by jury on all claims so triable.

//

//

//

//

Dated: March 4, 2026

Respectfully submitted,

**BRIGHTWORK LAW**

Briar Horn

Briar Horn, attorney for Plaintiff TRIUMPH LABS, INC.

# EXHIBIT A

# United States of America
## United States Patent and Trademark Office

**Reg. No. 7,299,038**

**Registered Feb. 06, 2024**

**Int. Cl.: 9, 42**

**Service Mark**

**Trademark**

**Principal Register**

Triumph Labs, Inc. (DELAWARE CORPORATION)
Legal Department
90 Sheridan Street
San Francisco, CALIFORNIA 94103

CLASS 9: Downloadable game software for use on mobile and cellular phones, handheld digital devices, and computers; Downloadable computer software, namely, software development tools for the creation of mobile internet applications and client interfaces; Downloadable game software

FIRST USE 3-22-2021; IN COMMERCE 6-10-2021

CLASS 42: Design, development, and implementation of software for mobile game applications

FIRST USE 3-22-2021; IN COMMERCE 6-10-2022

The color(s) orange is/are claimed as a feature of the mark.

The mark consists of an uppercase T with the leg of the T angled to the left and the ends of the arm of the T slanted to the right, on the top of the T and in the space on each side between the arm and the leg of the T are three equally offset shapes outlining the T; above the arm of the T a line extending along the arm and ending at a line extending from the slanted ends of the T arms; on each side of the T are shapes made up of two connected lines forming a T without the arm on the side opposite the side on which the shape is placed, with the remaining arm of such shape ending at the straight line extending the slant downward toward the base of the T, all of which appears in orange.

SER. NO. 97-759,896, FILED 01-18-2023

Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

**Reg. No. 7,299,038**

**Registered Feb. 06, 2024**

**Int. Cl.: 9, 42**

**Service Mark**

**Trademark**

**Principal Register**

Triumph Labs, Inc. (DELAWARE CORPORATION)
Legal Department
90 Sheridan Street
San Francisco, CALIFORNIA 94103

CLASS 9: Downloadable game software for use on mobile and cellular phones, handheld digital devices, and computers; Downloadable computer software, namely, software development tools for the creation of mobile internet applications and client interfaces; Downloadable game software

FIRST USE 3-22-2021; IN COMMERCE 6-10-2021

CLASS 42: Design, development, and implementation of software for mobile game applications

FIRST USE 3-22-2021; IN COMMERCE 6-10-2022

The color(s) orange is/are claimed as a feature of the mark.

The mark consists of an uppercase T with the leg of the T angled to the left and the ends of the arm of the T slanted to the right, on the top of the T and in the space on each side between the arm and the leg of the T are three equally offset shapes outlining the T; above the arm of the T a line extending along the arm and ending at a line extending from the slanted ends of the T arms; on each side of the T are shapes made up of two connected lines forming a T without the arm on the side opposite the side on which the shape is placed, with the remaining arm of such shape ending at the straight line extending the slant downward toward the base of the T, all of which appears in orange.

SER. NO. 97-759,896, FILED 01-18-2023

Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT B




TRIUMPH.GG
DOWNLOAD NOW


RIUMPH
RCADE




TRIUMPH




2:01
$14.29
13
Tap To Continue
3


TRIUMPH.GG
VISA
Pay
PayPal
PLAY $50
GET $50
Flappy Man
Win
$104.57
Brick Breaker
Win
$84.32


TRIUMPH


Kodak Black X TRIUMPH.GG
Why Kodak Black loves Triumph Arcade
Must be 18 or older and additional eligibility or award restrictions may exist. See https://docs.triumpharcade.com/terms-of-use for full terms of services. Crisis service and gaming counseling may be reached at 1-800-426-2537.


GIVE
TRIUMPH.GG
PLAY $50 GET $50
INSTANTLY






4:24
$1,905.04
TRIUMPH.GG


TRIUMPH
Earn $15 for EVERY FRIEND you REFER


$62.14
57
53
8
10
and you
6
32
TRIUMPH.GG


Soulja Boy shows off his profits
made from this app
see Triumph Terms of Use available at www.triumpharcade.com


$100
NEW CUSTOMERS
PLAY $50
GET$50
IN BONUS CASH






2:32
$112.67
14
17
TRIUMPH.GG




Nick Cannon X TRIUMPH.GG
Prize outcomes may vary. Amount offered is in Bonus Cash only, which allows for
additional entries into Triumph's real money tournaments but is not withdrawable and
must be used within 180 days, additional terms may apply. This offer may be
terminated or modified by Triumph at any time. Offer is void where prohibited and not
made or intended for persons located in unsupported locations. Must be 18 or older
and additional eligibility or award restrictions may exist. See https://
docs.triumpharcade.com/terms-of-use for full terms of service.
gaming counseling may be reached


$100

# EXHIBIT C

**Registration #:** PA0002565017
**Service Request #:** 1-15091482331

## Mail Certificate

Triumph Labs Inc.
Jamin Horn
1265 Battery Street, Fourth Floor
Fourth Floor
San Francisco, CA 94111 United States

**Priority:** Special Handling **Application Date:** February 03, 2026

## Correspondent

**Organization Name:** Triumph Labs Inc.
**Name:** Jamin Horn
**Email:** jamin@triumpharcade.com
**Telephone:** (415)233-2785
**Address:** 1265 Battery Street, Fourth Floor
Fourth Floor
San Francisco, CA 94111 United States

**Registration Number**
**PA 2-565-017**
**Effective Date of Registration:**
February 03, 2026
**Registration Decision Date:**
February 04, 2026

## Title

**Title of Work:** Soulja Boy Triumph Stream 5/29/25

## Completion/Publication

**Year of Completion:** 2025
**Date of 1st Publication:** May 29, 2025
**Nation of 1st Publication:** United States

## Author

- **Author:** Triumph Labs Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Triumph Labs Inc.
1265 Battery Street, Fourth Floor, San Francisco, CA, 94111, United States

## Limitation of copyright claim

**Material excluded from this claim:** preexisting audiovisual material

**New material included in claim:** all other cinematographic material

## Rights and Permissions

**Organization Name:** Triumph Labs Inc.
**Name:** Jamin Horn
**Email:** legal@triumpharcade.com

## Certification

**Name:** Jamin Horn
**Date:** February 03, 2026

---

**Correspondence:** Yes

**Registration #:** PA0002565294
**Service Request #:** 1-15091614537

## Mail Certificate

Triumph Labs Inc.
1265 Battery Street, Fourth Floor
Fourth Floor
San Francisco, CA 94111 United States

**Priority:** Special Handling **Application Date:** February 03, 2026

## Correspondent

**Organization Name:** Triumph Labs Inc.
**Name:** Jamin Horn
**Email:** jamin@triumpharcade.com
**Telephone:** (415)233-2785
**Address:** 1265 Battery Street, Fourth Floor
Fourth Floor
San Francisco, CA 94111 United States

**Registration Number**
# PA 2-565-294
**Effective Date of Registration:**
February 03, 2026
**Registration Decision Date:**
February 04, 2026

## Title

**Title of Work:** Yungeen Ace Triumph Stream 4/20/25

## Completion/Publication

**Year of Completion:** 2025
**Date of 1st Publication:** April 20, 2025
**Nation of 1st Publication:** United States

## Author

- **Author:** Triumph Labs Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Triumph Labs Inc.
1265 Battery Street, Fourth Floor, Fourth Floor, San Francisco, CA, 94111, United States

## Limitation of copyright claim

**Material excluded from this claim:** preexisting audiovisual material

**New material included in claim:** all other cinematographic material

## Rights and Permissions

**Name:** Jamin Horn
**Email:** legal@triumpharcade.com

## Certification

**Name:** Jamin Horn
**Date:** February 03, 2026

---

**Correspondence:** Yes

**Registration #:** PA0002565316
**Service Request #:** 1-15091614050

## Mail Certificate

Triumph Labs Inc.
1265 Battery Street, Fourth Floor
San Francisco, CA 94111 United States

**Priority:** Special Handling **Application Date:** February 03, 2026

## Correspondent

**Organization Name:** Triumph Labs Inc.
**Name:** Jamin Horn
**Email:** jamin@triumpharcade.com
**Telephone:** (415)233-2785
**Address:** 1265 Battery Street, Fourth Floor
Fourth Floor
San Francisco, CA 94111 United States

**Registration Number**
**PA 2-565-316**
**Effective Date of Registration:**
February 03, 2026
**Registration Decision Date:**
February 05, 2026

## Title

**Title of Work:** OhGeesy Triumph Stream 5/30/25

## Completion/Publication

**Year of Completion:** 2025
**Date of 1st Publication:** May 30, 2025
**Nation of 1st Publication:** United States

## Author

- **Author:** Triumph Labs Inc.
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Triumph Labs Inc.
1265 Battery Street, Fourth Floor, San Francisco, CA, 94111, United States

## Limitation of copyright claim

**Material excluded from this claim:** some preexisting / previously published audiovisual material

**New material included in claim:** all other cinematographic material

## Rights and Permissions

**Name:** Jamin Horn
**Email:** legal@triumpharcade.com

## Certification

**Name:** Jamin Horn
**Date:** February 03, 2026

**Correspondence:** Yes

**Registration #:** PA0002565318
**Service Request #:** 1-15091613991

## Mail Certificate

Triumph Labs Inc.
1265 Battery Street, Fourth Floor
San Francisco, CA 94111 United States

**Priority:** Special Handling **Application Date:** February 03, 2026

## Correspondent

**Organization Name:** Triumph Labs Inc.
**Name:** Jamin Horn
**Email:** jamin@triumpharcade.com
**Telephone:** (415)233-2785
**Address:** 1265 Battery Street, Fourth Floor
San Francisco, CA 94111 United States

**Registration Number**
**PA 2-565-318**
**Effective Date of Registration:**
February 03, 2026
**Registration Decision Date:**
February 05, 2026

## Title

**Title of Work:** Nick Cannon Triumph Stream 7/1/15

## Completion/Publication

**Year of Completion:** 2025
**Date of 1st Publication:** July 01, 2025
**Nation of 1st Publication:** United States

## Author

- **Author:** Triumph Labs Inc.
**Author Created:** entire motion picture
**Work made for hire:** Yes
**Citizen of:** United States
**Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Triumph Labs Inc.
1265 Battery Street, Fourth Floor, San Francisco, CA, 94111, United States

## Limitation of copyright claim

**Material excluded from this claim:** some preexisting / previously published audiovisual material

**New material included in claim:** all other cinematographic material

## Rights and Permissions

**Name:** Jamin Horn
**Email:** legal@triumpharcade.com

## Certification

**Name:** Jamin Horn
**Date:** February 03, 2026

---

**Correspondence:** Yes

# EXHIBIT D


SQUIRTS
95
$0.00
Score: 0
TIME
0:52
1.5x
1.5x
1x
2x
1x
1x
125
155
185


Daily Sub Goal: 5/100
2:57
$0
Score: 0
11
12
TRIUMPH.GG
DRAXY2FLY: WHAT GAME IS THAT
I PLAYED QUISE ALREADY


You Win!
Copy Game ID
$151.76 + 152
Buy in: $150 | Score: 354 | Multiplier: 1.01x
SCORE
PRIZE
925
2.5x
$375.00
839
$337.50
811
2x
$300.00
783
$262.50
724
$225.00
541
$187.50
354
Your score
$151.76
323
Break Even
$150.00
280
$112.50
247
$75.00
170
$37.50
Tap anywhere to claim
PARADISE


2:24
16%
11%
miserably-arriving-mako took the crown
eat
2X
BOOSTED
2
Ping 35

# EXHIBIT E


SQUIRTS
99
$0.00
Score: 0
TIME
0:59
1.5x
1.5x
1x
2x
1x
1x
RINGS
Prize outcomes may vary
125
155
185


2:55
$0.06
44
Score: 27
9




Copy Game ID
You Win!
$151.76 + 152
SCORE
PRIZE
925 2.5x $375.00
839 $337.50
811 2x $300.00
783 $262.50
724 $225.00
541 $187.50
354 Your score $151.76
323 Break Even $150.00
280 $112.50
247 $75.00
170 $37.50
Tap anywhere to claim


2:02
33%
CAN
2X
BOOSTED

# EXHIBIT F


SQUIRTS
100
$0.00
Score: 0
TIME
1:00
1.5x
1.5x
1x
2x
YEAH
Must be 18 or older and additional eligibility or award restrictions may exist. See https://docs.triumpharcade.com/terms-of-use for full terms of services. Crisis service and gaming counseling may be reached at 1-800-426-2537.
Prize outcomes may vary.
125
155
185


2:59
$0




Copy Game ID
You Win!
$151.76 + 152
Buy in: $150 | Score: 354 | Multiplier: 1.01x
SCORE
PRIZE
925 2.5x $375.00
839 $337.50
811 2x $300.00
783 $262.50
724 $225.00
541 $187.50
354 $151.76
323 Break Even $150.00
280 $112.50
247 $75.00
170 $37.50
Tap anywhere to claim


WHITE BOY TEACHES NICK CANNON HOW TO MAKE MONEY ON TRIUMPH'S NEW MULTIPLAYER GAME
CAN
2X
BOOSTED

# EXHIBIT G

# Claim Transfer Agreement

## TRANSFER OF CLAIM AGREEMENT

1. The undersigned transferor ("Transferor") in exchange for a payment equal to $750 upon the successful judgment and collection obtained with respect to the Claims, as defined below, (the "Purchase Price"), the adequacy and sufficiency of which are hereby acknowledged, hereby unconditionally and irrevocably sells, transfers and assigns to Triumph Labs, Inc. (the "Transferee"), and Transferee hereby agrees to receive, as of the date hereof, (a) all of Transferor's right, title and interest in and to the claims related to the use of the Transferor's likeness arising under applicable laws with respect to any "work made for hire" by the Transferee on behalf of the Transferor (the "Claim; (b) all rights and benefits of Transferor relating to the Claim, including without limitation the right to enforce such claim, any right to receive cash, securities, instruments, principal, interest, damages, penalties, fees, expenses, and/or other amounts or other property, which may be paid or distributed with respect to the Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Claim, the "Transferred Claims").

2. Transferor hereby represents, warrants and covenants to Transferee that Transferor has not transferred the Claim to any other person and has not authorized any other person to use the Transferee's likeness with respect to content created by the Claims.

Transferor is aware that the Purchase Price received herein for the sale of the Transferred Claims may differ both in kind and amount from any distributions ultimately made pursuant to any plan of reorganization confirmed by the Court in the Proceedings. Transferor acknowledges that, except as set forth in this Agreement, neither Transferee nor any agent or representative of Transferee has made any representation whatsoever to Transferor regarding the status of the Proceedings, the condition of the Debtor (financial or otherwise) or any other matter relating to the Proceedings, the Debtor or the Transferred Claims.

7. Transferor's and Transferee's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of California (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Any action arising under or relating to this Agreement shall be brought in San Francisco, California.

8. Other than as expressly set forth in this Agreement, neither Transferor nor Transferee shall have any liability or indemnification obligation to the other party in connection with any loss incurred in connection with the transactions contemplated herein.

Docusign Envelope ID: 6F980463-B4AC-4F81-BCE9-DC74331689CC

IN WITNESS WHEREOF, this AGREEMENT is executed this day of [agreement execution date].

TRANSFEROR

By: DocuSigned by: 3449E096871B47E

Name: Sean Moehring

2/11/2026

TRANSFEREEE

Triumph Labs, Inc.

By: DocuSigned by: Jamin Horn 9245E1988DC04E7...

Name: Jamin Horn

Title: General Counsel

Docusign Envelope ID: 7D5A77B2-9A9B-4BED-94F0-4826B8BA7A4F

# Claim Transfer Agreement

## TRANSFER OF CLAIM AGREEMENT

1. The undersigned transferor ("Transferor") in exchange for a payment equal to $750 upon the successful judgment and collection obtained with respect to the Claims, as defined below, (the "Purchase Price"), the adequacy and sufficiency of which are hereby acknowledged, hereby unconditionally and irrevocably sells, transfers and assigns to Triumph Labs, Inc. (the "Transferee"), and Transferee hereby agrees to receive, as of the date hereof, (a) all of Transferor's right, title and interest in and to the claims related to the use of the Transferor's likeness arising under applicable laws with respect to any "work made for hire" by the Transferee on behalf of the Transferor (the "Claim; (b) all rights and benefits of Transferor relating to the Claim, including without limitation the right to enforce such claim, any right to receive cash, securities, instruments, principal, interest, damages, penalties, fees, expenses, and/or other amounts or other property, which may be paid or distributed with respect to the Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Claim, the "Transferred Claims").

2. Transferor hereby represents, warrants and covenants to Transferee that Transferor has not transferred the Claim to any other person and has not authorized any other person to use the Transferee's likeness with respect to content created by the Claims.

Transferor is aware that the Purchase Price received herein for the sale of the Transferred Claims may differ both in kind and amount from any distributions ultimately made pursuant to any plan of reorganization confirmed by the Court in the Proceedings. Transferor acknowledges that, except as set forth in this Agreement, neither Transferee nor any agent or representative of Transferee has made any representation whatsoever to Transferor regarding the status of the Proceedings, the condition of the Debtor (financial or otherwise) or any other matter relating to the Proceedings, the Debtor or the Transferred Claims.

7. Transferor's and Transferee's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of California (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Any action arising under or relating to this Agreement shall be brought in San Francisco, California.

8. Other than as expressly set forth in this Agreement, neither Transferor nor Transferee shall have any liability or indemnification obligation to the other party in connection with any loss incurred in connection with the transactions contemplated herein.

Docusign Envelope ID: 7D5A77B2-9A9B-4BED-94F0-4826B8BA7A4F

IN WITNESS WHEREOF, this AGREEMENT is executed this day of [agreement execution date].

TRANSFEROR

By: DocuSigned by: Esteban Alvarado 11821E72B01D4DD...

Name: Esteban Alvarado

2/11/2026

TRANSFEREEE

Triumph Labs, Inc.

By: DocuSigned by: Jamin Horn 9245E1988DC04E7...

Name: Jamin Horn

Title: General Counsel

## Claim Transfer Agreement

### TRANSFER OF CLAIM AGREEMENT

1. The undersigned transferor ("Transferor") in exchange for a payment equal to $750 upon the successful judgment and collection obtained with respect to the Claims, as defined below, (the "Purchase Price"), the adequacy and sufficiency of which are hereby acknowledged, hereby unconditionally and irrevocably sells, transfers and assigns to Triumph Labs, Inc. (the "Transferee"), and Transferee hereby agrees to receive, as of the date hereof, (a) all of Transferor's right, title and interest in and to the claims related to the use of the Transferor's likeness arising under applicable laws with respect to any "work made for hire" by the Transferee on behalf of the Transferor (the "Claim; (b) all rights and benefits of Transferor relating to the Claim, including without limitation the right to enforce such claim, any right to receive cash, securities, instruments, principal, interest, damages, penalties, fees, expenses, and/or other amounts or other property, which may be paid or distributed with respect to the Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Claim, the "Transferred Claims").

2. Transferor hereby represents, warrants and covenants to Transferee that Transferor has not transferred the Claim to any other person and has not authorized any other person to use the Transferee's likeness with respect to content created by the Claims.

Transferor is aware that the Purchase Price received herein for the sale of the Transferred Claims may differ both in kind and amount from any distributions ultimately made pursuant to any plan of reorganization confirmed by the Court in the Proceedings. Transferor acknowledges that, except as set forth in this Agreement, neither Transferee nor any agent or representative of Transferee has made any representation whatsoever to Transferor regarding the status of the Proceedings, the condition of the Debtor (financial or otherwise) or any other matter relating to the Proceedings, the Debtor or the Transferred Claims.

7. Transferor's and Transferee's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of California (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Any action arising under or relating to this Agreement shall be brought in San Francisco, California.

8. Other than as expressly set forth in this Agreement, neither Transferor nor Transferee shall have any liability or indemnification obligation to the other party in connection with any loss incurred in connection with the transactions contemplated herein.

Docusign Envelope ID: 6EB6E082-024B-48B2-83CA-2A10CEA09210

IN WITNESS WHEREOF, this AGREEMENT is executed this day of [agreement execution date].

TRANSFEROR

Signed by:

By: [signature]
B960784A0E1D488

Name: Colm Hayden

2/10/2026

TRANSFEREEE

Triumph Labs, Inc.

DocuSigned by:

By: Jamin Horn
9245E1988DC04E7...

Name: Jamin Horn

Title: General Counsel